1

2

3

4

5

6                      UNITED STATES DISTRICT COURT

7                          DISTRICT OF NEVADA

8                                  * * *

9   AMERICAN FEDERATION OF STATE,          )
    COUNTY AND MUNICIPAL EMPLOYEES )
10  LOCAL 4041, et al.,                     )        03:09-CV-00235-LRH-RAM
                                            )
11             Plaintiffs,                  )
                                            )        ORDER
12  v.                                      )
                                            )
13  THE STATE OF NEVADA, ex rel., its       )
    Department of Corrections, et al.,      )
14                                          )
               Defendants.                  )
15  _____)

16         Before the court is Defendants State of Nevada, Department of Corrections ("NDOC"),

17  Howard Skolnick, Carla Crevling, Pat Conmay, and William Donat's (collectively "Defendants")

18  Motion for Summary Judgment (#39[1]).  Plaintiff Robert Lee Bianchi has filed an opposition (#52)

19  to which Defendants replied (#54).  More than five months after Defendants submitted the motion

20  for summary judgment, Plaintiffs American Federation of State, County and Municipal Employees

21  Local 4041 and Randy Lee Cook joined Plaintiff Biachi's opposition.  (*See* Joinder (#55).)

22  **I.     Facts and Procedural History**

23         This is a First Amendment retaliation case arising out of Plaintiffs Bianchi and Cook's

24  employment as a lieutenant and a senior correctional officer, respectively, at Nevada State Prison.

25

26
    _____
           [1]Refers to the court's docket entry number.

Plaintiffs allege that Defendants retaliated against them for their involvement in preparing a "no confidence" petition against Warden Donat.  In January of 2008, the "employees' association" began putting together the "petition of no-confidence" in the warden.  In a declaration, Bianchi states that Donat discovered the petition in April of 2008, and that in late April or early May of 2008, the administration discovered that Bianchi was the moving force behind the petition. Plaintiffs contend that the alleged retaliation arose out of the three incidents described below.

**A.  Hanke Incident**

On October 24, 2007, correctional officer Alois Hanke engaged in horseplay with an inmate, striking the inmate on the hand with a long-handled toilet brush.  As a result of Hanke's conduct, the inmate injured his hand.  The inmate reported the incident to the unit sergeant, Rick Rose, who informed Plaintiff Bianchi of the situation.

Following the incident, Rose and Bianchi questioned Hanke about what occurred. After this discussion, Bianchi sent Hanke back to his unit and instructed Hanke to complete the necessary reports.  Bianchi then told Rose he was going to speak with Associate Warden of Operations Adam Watson about the incident.

According to Watson, Bianchi stated that he wanted to handle the incident "in house" and that he would try to convince Hanke to "just retire."  Watson informed Warden Bill Donat of these statements.  Bianchi denies ever suggesting that Hanke should retire.

After Plaintiff Bianchi spoke with Associate Warden Watson, Bianchi left the prison for a doctor's appointment.  It appears that Lieutenant Brian Henley then took over the investigation into the Hanke incident.  The same day, Hanke tendered his resignation to Henley.

Following this incident, the NDOC initiated an investigation into Bianchi and Rose's conduct.  An independent investigator conducted the investigation and concluded that Rose and Bianchi had acted questionably.  Based on this investigation, Warden Donat found that Bianchi violated Personnel Operation Procedure 339 by disobeying a regulation or order, wilfully failing to

intervene or respond when necessary, and failing to report misconduct.  As a result, on July 16, 2008, Warden Donat recommended that Bianchi be demoted to senior correctional officer.

Plaintiff appealed his demotion.  The Personnel Commission determined a Letter of Reprimand was the appropriate sanction.  As such, Bianchi's demotion was revoked, and, on February 11, 2009, Bianchi was issued a Letter of Reprimand.  Bianchi appealed the issuance of the letter, and it appears that the NDOC agreed to remove the reprimand.

**B.  Bianchi's Use of Sick Leave**

On February 12, 2008, Bianchi called in sick to work.  That evening, two employees of Lovelock Correctional Center, where Bianchi used to work, visited Bianchi's family-owned business, Bianchi's Pizza.  The employees saw Bianchi at the established and stated that, after Bianchi saw them, he appeared to hide.

The NDOC conducted an investigation into the incident and concluded that Bianchi's use of sick leave on February 12, 2008, violated four provisions of the NDOC Administrative Regulations.  In particular, the NDOC found that Bianchi knowingly made a false or misleading statement in response to questions during the investigation, knowingly made a false or misleading statement by submitting a false time sheet, neglected his duties, and disobeyed an order or regulation.  Warden Donat recommended that Plaintiff be demoted to senior correctional officer. As explained above, Plaintiff appealed his demotion, and the demotion ultimately was withdrawn. Further, the Personnel Commission determined that Bianchi need not be punished in any way for his use of sick leave.

**C.  Cook Incident**

On February 22, 2008, at Nevada State Prison, Plaintiff Senior Correctional Officer Cook was in Unit 5 in an area where correctional officers take various breaks.  Correctional Officers Shawn Murphy and Michael Swanson were also present.  Cook began to argue with Murphy, and Cook challenged Murphy to a fight.  As a result of the incident, Cook was issued a written

1   reprimand for engaging in unprofessional behavior.

2   **II.     Legal Standard**

3          Summary judgment is appropriate only when "the pleadings, depositions, answers to

4   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

6   of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence,

7   together with all inferences that can reasonably be drawn therefrom, must be read in the light most

8   favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

9   U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.

10   2001).

11          The moving party bears the burden of informing the court of the basis for its motion, along

12   with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,

13   477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

14   must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

15   find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

16   1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

17          To successfully rebut a motion for summary judgment, the non-moving party must point to

18   facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.

19   Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might

20   affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

21   242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary

22   judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute

23   regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

24   return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of

25   a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a

26

1  genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.

2  *See id.* at 252.

3  **III.   Discussion**

4      Plaintiffs allege the following claims for relief: (1) First Amendment retaliation; (2) denial

5  of procedural due process in violation of the Fourteenth Amendment; and (3) intentional infliction

6  of emotional distress.  In the opposition, Plaintiffs do not dispute that they received due process.

7  As such, the court will grant summary judgment on this claim.  The court will address Plaintiffs'

8  remaining claims below.

9      **A.  First Amendment Retaliation**

10      Plaintiffs allege that Defendants retaliated against them for exercising their First

11  Amendment right to free speech.  "It is well settled that 'a State cannot condition public

12  employment on a basis that infringes the employee's constitutionally protected interest in freedom

13  of expression.'"  *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006) (*quoting Connick v. Meyers*, 461

14  U.S. 138, 142 (1983).  Generally, "[t]o sustain a First Amendment retaliation claim, a public

15  employee must show (1) the employee engaged in constitutionally protected speech, (2) the

16  employer took adverse employment action against the employee, and (3) the employee's speech

17  was a 'substantial or motivating' factor in the adverse action."  *Posey v. Lake Pend Oreille Sch.*

18  *Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (*quoting Freitag v. Ayers*, 468 F.3d 528, 543

19  (9th Cir. 2006)).

20      Noting that "First Amendment retaliation law has evolved dramatically, if somewhat

21  inconsistently," the Ninth Circuit has clarified and explained the appropriate approach to assessing

22  a First Amendment retaliation claim.  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  In

23  doing so, the court outlined the following sequential, five-step series of questions to be answered in

24  a First Amendment retaliation case: (1) whether the plaintiff spoke on a matter of public concern;

25  (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's

26

protected speech was a substantial or motivating factor in an adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Id.*

Defendants do not dispute that Plaintiffs' involvement in preparing the no-confidence petition is protected speech. Instead, Defendants contend that they had an adequate justification for reprimanding both Bianchi and Cook.

As discussed above, Defendants penalized Bianchi for (1) failing to report and properly supervise during the Hanke incident and (2) making false and misleading statements, acting insubordinately, and neglecting his duties in relation to his use of a sick day. Defendants penalized Cook for being discourteous and acting in an unbecoming manner when he argued with Murphy and challenged him to a fight.

Defendants note that these were serious incidents and that either an independent investigator or individuals other than the defendants in this case determined that discipline was warranted. Bianchi and Cook's conduct, as well as the involvement of individuals other than Warden Donat, indicates that the NDOC had legitimate reasons for reprimanding Plaintiffs and would have reprimanded Plaintiffs regardless of their involvement in the "no confidence" vote against Donat. Further, Plaintiffs have not presented evidence indicating that the punishment they received was harsher than punishment received by other correctional officers engaging in similar conduct or otherwise suggesting that the punishment was inappropriate. In other words, Plaintiff has failed to present evidence upon which a reasonable jury could conclude that Defendants retaliated against Bianchi and Cook for engaging in protected speech. As such, summary judgment on Plaintiffs' First Amendment retaliation claim is appropriate.

**B. Intentional Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, the plaintiff must

demonstrate the following: (1) "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress"; (2) severe or extreme emotional distress; and (3) actual or proximate causation. *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (citation omitted).

Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted). This is not such a case. Plaintiffs have not identified facts in the record suggesting the Defendants' conduct was extreme or outrageous. As such, the court will grant summary judgment on the intentional infliction of emotional distress claim.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#39) is GRANTED.

The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 9th day of September, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE